Wardlaw, J.,
dissenting. The defendant’s seal to the bond *355 is not 'denied. The condition, according to the plain meaning of its terms, has not been performed: for, although it may be said that the forthcoming of the negroes has never been required by any order of the Court of Equity, the money decree made by that Court has not been paid. The defence, then, is, that the condition of the bond, or the latter of two conditions, was unauthorized; in other words, that the bond was obtained by duress, and is not the act of the supposed obligors.
Common law bonds taken from parties and from persons who are not parties, in the Court of Equity, are, I suppose, necessary to the efficiency of the remedies there administered. When such bonds come under the consideration of a Court of law, some examination of the equity proceedings out of which they grow, and to which reference must be had in the assessment of damages, becomes indispensable. But it is greatly to be regretted, that a bond, whose validity as an obligation is disputable for reasons which assail the order under which it was taken, should be sent from equity to law; and, that when a bond is so sent, there should not be by the equity proceedings, a plain ascertainment of the amount of damages which the alleged breach has produced. As a Common Law Judge, I am incompetent to decide questions concerning the extent of equity jurisdiction or the propriety of equity practice. I feel embarrassed in groping my way through a mass of papers in a cause, which has been heard in a jurisdiction foreign to that of my own Court, and picking up a scrap here and a scrap there, in the effort to collect what has been decided pertinent to the condition of a familiar instrument that appears to be a plain obligatibn. When, it is proposed that I should venture further and inquire whether what has been done was proper in itself, or properly done, I stop and examine the extent of my own powers. Here the Chancellors have been called to the assistance of the Law Judges in the Court of Errors; but skilled as they are in the learning pertaining to their own Court, they *356 become in the consideration of a law appeal mere law Judges like my brethren and myself. The question for us all, in this case, is, what should the Circuit Judge have done ? Ought he to have ordered a nonsuit ? — and it must be decided by us all, as it should be decided, if each was a member of the law bench exclusively.
I have read, and suppose it is true, and properly so, that Chancery .is jealous of the supervision-of its process by any other tribunal: so much so that it .will enjoin an action for a false imprisonment had under its attachment irregularly obtained. I have been taught that it moulds its practice at discretion to subserve the ends of justice. The interlocutory orders which shall be made for the preservation of property during a litigation, or for retaining the means of rendering a final decree efficient: the manner of obtaining an order for ne exeat or injunction: the mode of executing an order: the substitute which shall be accepted for a strict ne exeat bond; and the terms upon which an obligation, made under an order, may be discharged, — all I understand to be matters of equity practice. When I am told that the office of an injunction is to restrain the doing of an act, and not to compel the performance of one, if I see an order properly made which requires the performance of an act within the province of equity, and which is enforced by an effective process, I do not trust my judgment in searching equity precedents and determining the appropriate names of equity writs, but I leave those who would cavil at the practice, to apply to the Court whose authority is involved in the order, and from whose armory the process was selected. When the oppression and hardship of requiring from a defendant- in equity, before the case against him has been heard, security to answer the decree, are urged upon me, I remember that such security is no more execution before judgment, than is bail in a common law Court, and is said to be often in equity practice taken in mitigation of the severe requirements of a strict ne exeat. If a bond containing such security is brought *357 before me, and the sureties complain that no opportunity to render their principal in discharge of themselves has been afforded, I regard the order of a Chancellor that the bond shall be put in suit at law as decisive, according to the practice of equity, either that all proper opportunity has been afforded, or that the render in discharge was no part of the condition. I cannot say that under no circumstances could equity in the exercise of a sound discretion require a bond to answer a decree in all events; nor that the defendant in equity did not regard such a bond as a favor to himself granted in ease of more rigorous terms that might have been exacted; nor that the sureties to the bond did not enter into it with a full understanding of the .obligation they were incurring. It is their act, and is subject only to the condition written in it, unless it was obtained by duress. There could have been no duress if it was taken under an order which was within the competence of the officer who made it.
The true point in this case is then contained in the question, whether the Commissioner in equity had power to make the order which he did make. This question requiring of one Court to judge of the acts done by an officer of another Court is in its nature a difficult and delicate one; and it becomes more so,.when we consider the superintending control of a Chancellor over the Commissioner, which is contemplated by the Act of 1840, when it confers upon a Commissioner power to grant orders for ne exeat, and for injunctions common and special. It might well be expected that if the Commissioner ■exceeded his powers, application for discharge of an obligation improperly extorted would be made to a Chancellor at the next sitting, or at any rate when he comes after final decree to order a suit upon such obligation. But it may be answered, that the surety in the bond was not a party in equity, and that no subsequent ratification of a Commissioner’s acts by a Chancellor, could give validity to an instrument which was not binding on the surety when it was executed. In considering the Commis *358 sioner’s power, the recognition of an instrument taken under his order, which a subsequent order of a Chancellor .made for enforcing the instrument contains, is however very influential to show the practice of the equity Court: and an order, which in effect partly restrains the removal of property, and partly requires a mitigated ne exeat bond, when thus impliedly approved by a Chancellor, ought, as it seems to me, to be held in a Court of law to be embraced by the terms used in the Act of 1840.
I come then to the conclusion, that the payment of the money decreed, was required by a condition of the bond which the defendant before us, as obligor, was bound to perform, and that by non-performance he has incurred the penalty of the bond, under which damages to the extent of the decree should be assessed.
There is, however, another view under which,"even if the Commissioner had power only to order a bond for the forthcoming of specific property, and not for the performance of a decree, the plaintiff in this case might be entitled to recover. The decree of the Chancellor, — that the defendant in equity pay a certain sum of money, and that unless by a day certain he fulfil the conditions of the bond, the Commissioner put the bond in suit, — is in effect a decree that the specific property mentioned in the condition be forthcoming to answer the sum decreed; and imposes upon the surety, the defendant here at law, the burden of showing either the forthcoming or a sufficient excuse. The two conditions of the bond may be considered as alternative, or the latter may be considered void and the former broken. The result is the same in either view.
It is surely a most inequitable result that has been attained, where of two negroes claimed to be subject to the trust mentioned in the bill, the principal has disposed of one, and the surety has bought the other under his judgment taken to indemnify himself against this bond, and now the bond is *359 inoperative, tbe principal is insolvent, and the surety goes ■without day.